UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- X

SAVANNA AUTO SALES,

          Plaintiff,

- against -

MEDITERRANEAN SHIPPING
COMPANY, S.A.,

          Defendant.

------------------------------------------------------- X

**OPINION AND ORDER**

13 Civ. 1615 (SAS)

SHIRA A. SCHEINDLIN, U.S.D.J.:

## I.   INTRODUCTION

Plaintiff Savanna Auto Sales ("Savanna") filed a maritime action against defendant Mediterranean Shipping Company, S.A. ("MSC") for misdelivery of a shipment of used cars. After answering the Complaint, MSC filed a motion for partial judgment on the pleadings, arguing that its liability is limited under the Carriage of Goods by Sea Act ("COGSA") as a matter of law. Because the provisions of COGSA apply to this shipment, and because neither the cars Savanna shipped nor the container they were in qualify as "packages" under that Act, MSC's liability in this action is limited based on the number of customary freight units that were shipped.

1

## II.  FACTUAL BACKGROUND

In March 2012, Savanna contracted to sell four automobiles and various parts to Ali Mohi Hammood, a resident of Iraq.[1] Through a freight forwarder, Savanna hired MSC to ship the cars from New York City to Umm Qasr Port in Iraq.[2] According to the bill of lading, MSC was to deliver the cargo "against the surrender of one original Bill of Lading."[3]

The bill of lading described the contents of the shipment to include "4 unpackaged multiple units of used autos," then listed the makes and models, along with "one lot of used auto parts."[4] However, on the same page, the bill of lading also states, "Total Number of Packages:  4."[5] In stating the number of containers

---

[1]  *See* First Amended Complaint ("FAC") ¶ 5.

[2]  *See id.* ¶ 6.

[3]  *See* Bill of Lading, Ex. 1 to FAC, at 1.  The copy attached to the First Amended Complaint is largely illegible.  However, this Court relied upon the reprint provided by MSC in its Notice of Motion in order to confirm the text of the bill of lading.  *See* Bill of Lading Terms and Conditions ("Terms and Conditions"), Ex. C to Declaration of Garth S. Wolfson, Counsel for MSC, at 1.

[4]  *See* Bill of Lading at 1.

[5]  *Id.*

or packages received by the carrier, the bill merely states that one container was received.[6] The box stating the declared value of the goods contained only X's.[7]

In addition to these statements, the bill of lading also purported to define the term "package" for the purposes of COGSA.[8] The relevant clause read as follows:

> 6.2 For limitation purposes under the COGSA, it is agreed that the meaning of the word "package" shall be any palletised and/or unitised assemblage of cartons which has been palletised and/or unitised for the convenience of the Merchant, regardless of whether said pallet or unit is disclosed on the front hereof.[9]

On April 29, 2012, a telex was sent to MSC personnel stating that the full set of original bills of lading was surrendered by Savanna, and that the cargo should thus be turned over to Hammood.[10] However, Savanna denies surrendering a bill of lading, and claims instead that MSC or its agent "manufactured a fraudulent telex release" and improperly turned over the cargo.[11] Through its

---

[6] *See id.*

[7] *See id.*

[8] *See id.* at 2; Terms and Conditions at 5.

[9] Bill of Lading at 2; Terms and Conditions at 5.

[10] *See* FAC ¶ 11; Telex Release, Ex. 3 to FAC.

[11] FAC ¶¶ 11-12.

or packages received by the carrier, the bill merely states that one container was received.[6] The box stating the declared value of the goods contained only X's.[7]

In addition to these statements, the bill of lading also purported to define the term "package" for the purposes of COGSA.[8] The relevant clause read as follows:

> 6.2 For limitation purposes under the COGSA, it is agreed that the meaning of the word "package" shall be any palletised and/or unitised assemblage of cartons which has been palletised and/or unitised for the convenience of the Merchant, regardless of whether said pallet or unit is disclosed on the front hereof.[9]

On April 29, 2012, a telex was sent to MSC personnel stating that the full set of original bills of lading was surrendered by Savanna, and that the cargo should thus be turned over to Hammood.[10] However, Savanna denies surrendering a bill of lading, and claims instead that MSC or its agent "manufactured a fraudulent telex release" and improperly turned over the cargo.[11] Through its

---

[6] *See id.*

[7] *See id.*

[8] *See id.* at 2; Terms and Conditions at 5.

[9] Bill of Lading at 2; Terms and Conditions at 5.

[10] *See* FAC ¶ 11; Telex Release, Ex. 3 to FAC.

[11] FAC ¶¶ 11-12.

agent, Savanna then "demanded payment from [MSC] in the amount of $75,978.62, the full value of the [c]argo."[12]

After MSC failed to comply with the demand, Savanna filed suit in this Court seeking recovery of $75,978.62.[13]  After MSC filed its Answer, it also moved for partial judgment on the pleadings, asking this Court to determine its maximum liability as either $500 or $2000 under COGSA's $500 per package limitation.[14]

## III.   LEGAL STANDARD

"The same standards apply to a Rule 12(c) motion for judgment on the pleadings and to a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted."[15]  As such, "this Court must 'view the pleadings in the light most favorable to, and draw all reasonable inferences in favor of, the nonmoving party.'"[16]  "[A] party is [then] entitled to a judgment on the pleadings

---

[12]   *Id.* ¶ 13.

[13]   *See id.* at 4.

[14]   *See* Notice of Motion; MSC's Memorandum of Law in Support of Motion at 5-9.

[15]   *United States Fidelity & Guar. Co. v. Petroleo Brasileiro S.A.-Petrobras*, No. 98 Civ. 3099, 2001 WL 300735, at *2 (S.D.N.Y. Mar. 27, 2001).

[16]   *Davidson v. Flynn*, 32 F.3d 27, 29 (2d Cir. 1994) (quoting *Madonna v. United States*, 878 F.2d 62, 65 (2d Cir. 1989)).

'only if it has established that no material issue of fact remains to be resolved and that [it] is entitled to judgment as a matter of law.'"[17]

## IV.    APPLICABLE LAW

### A.    Applicability of COGSA Limitation

COGSA applies to "[e]very bill of lading . . . which is evidence of a contract for the carriage of goods by sea to or from ports of the United States, in foreign trade . . . ."[18]  Section 4(5) of COGSA provides carriers and ships with a $500 per package cap on liability from "loss or damage" of goods, "unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading."

The only exception to COGSA's limitation of liability that is at issue here is the doctrine of unreasonable deviation.  COGSA provides that a "reasonable deviation [in the voyage] shall not be deemed to be an infringement or breach of [COGSA] or the contract of carriage."[19]  As a corollary of this,

---

[17]    *Bailey v. Pataki*, No. 08 Civ. 8563, 2010 WL 234995, at *1 (S.D.N.Y. Jan. 19, 2010) (quoting *Juster Assocs. v. Rutland*, 901 F.2d 266, 269 (2d Cir. 1990) (alteration in original) (internal quotation marks omitted)).

[18]    Pub. L. No. 74-521, 49 Stat. 1207 (1936) (codified as amended at 46 U.S.C. § 30701 note (2006)).

[19]    COGSA § 4(4).

5

"'*unreasonable* deviations' may deprive a carrier of COGSA's benefits."[20]  In the Second Circuit, the doctrine of unreasonable deviation is "limited . . . to two situations:  geographic deviation and unauthorized on-deck stowage."[21]  Despite attempts to expand the doctrine, the Second Circuit has refused to do so, enforcing COGSA's limitation of liability even in "instances of corrupt or criminal misdelivery."[22]

### B. Definition of a Package

"For decades American admiralty courts have struggled to define the deceptively simple noun 'package' within the context of § 4(5) of [COGSA]."[23]  In the Second Circuit, "[t]he question of what constitutes a COGSA package . . . is largely and in the first instance a matter of contract interpretation."[24]  "The first

---

[20] *OOO Garant-S v. Empire United Lines Co.*, No. 11 Civ. 1324, 2013 WL 1338822, at *5 (E.D.N.Y. Mar. 29, 2013) (emphasis added) (quoting *B.M.A. Indus., Ltd. v. Nigerian Star Line, Ltd.*, 786 F.2d 90, 91 (2d Cir. 1986) (per curiam)).

[21] *Sedco, Inc. v. S.S. Strathewe*, 800 F.2d 27, 31 (2d Cir. 1986) (citing *B.M.A. Indus.*, 786 F.2d at 91-92).  *Accord Vigilant Ins. Co. v. M/T Clipper Legacy*, 656 F. Supp. 2d 352, 359-60 (S.D.N.Y. 2009).

[22] *B.M.A. Indus.*, 786 F.2d at 92.

[23] *Orient Overseas Container Line, (UK) Ltd. v. Sea-Land Serv., Inc.*, 122 F. Supp. 2d 481, 482 (S.D.N.Y. 2000).

[24] *Allied Chem. Int'l Corp. v. Companhia de Navegacao Lloyd Brasileiro*, 775 F.2d 476, 485 (2d Cir. 1985).

step for the Court is to begin with the use of the term 'package' in the bill of lading."[25] While this reliance on the understanding of the parties prevents a concrete definition, there still must have been "some packaging preparation for transportation . . . which facilitates handling" for something to qualify as a COGSA package.[26]

An even more complicated question arises when goods are shipped within a container. Courts have generally avoided classifying the container as a package, with the Second Circuit holding that "at least when what would ordinarily be considered packages are shipped in a container supplied by the carrier and the number of such units is disclosed in the shipping documents, each of those units and not the container constitutes the 'package' referred to in [COGSA]."[27] In addition, the container itself may not qualify as the package. "[I]n the absence of clear and unambiguous language indicating agreement on the definition of 'package,' then [the court] will conclusively presume that the container is not the

---

[25] *Agfa Gevaert AG v. TMM Lines Ltd.*, No. 04 Civ. 4202, 2005 WL 2063836, at *6 (S.D.N.Y. Aug. 25, 2005) (citing *Seguros Illimani S.A. v. M/V Popi P*, 929 F.2d 89, 94 (2d Cir. 1991)).

[26] *Aluminios Pozuelo Ltd. v. S.S. Navigator*, 407 F.2d 152, 155 (2d Cir. 1968). *Accord Binladen BSB Landscaping v. M.V. Nedlloyd Rotterdam*, 759 F.2d 1006, 1012 (2d Cir. 1985).

[27] *Mitsui & Co. v. American Export Lines, Inc.*, 636 F.2d 807, 817 (2d Cir. 1981).

package where the bill of lading discloses the container's contents."[28] If the parties did not unambiguously define the container as the package, and the other units involved cannot qualify as COGSA packages, "the $500 limit would apply 'per customary freight unit'" instead.[29] In the Second Circuit, this "customary freight unit" is "the actual freight unit used by the parties to calculate freight for the shipment at issue."[30]

## V.     DISCUSSION

### A.     The COGSA Limitation Applies to this Shipment

Because the bill of lading for the shipment is "evidence of a contract for the carriage of goods by sea to or from ports of the United States, in foreign trade," it is subject to the limitations of liability contained in COGSA.[31] Savanna did not declare a value for the goods in question on the bill of lading,[32] and

---

[28]     *Smythgreyhound v. M/V Eurygenes*, 666 F.2d 746, 753 n.20 (2d Cir. 1981).

[29]     *Mitsui*, 636 F.2d at 822 (quoting COGSA § 4(5)).

[30]     *FMC Corp. v. S.S. Marjorie Lykes*, 851 F.2d 78, 80 (2d Cir. 1988) (citing *Binladen*, 759 F.2d at 783).

[31]     *See, e.g.*, *Kawasaki Kisen Kaisha Ltd. v. Regal-Beloit Corp.*, 130 S. Ct. 2433, 2440 (2010) ("COGSA . . . applies to shipments from United States ports to ports of foreign countries and vice versa.").

[32]     *See* Bill of Lading at 1.

accordingly its recovery is limited to "$500 per package . . . or in case of goods not shipped in packages, per customary freight unit . . . ."[33]

        Savanna argues that MSC is not entitled to limitation under COGSA because by allegedly issuing the fraudulent telex release, MSC unreasonably deviated from the proposed shipment.[34] Notwithstanding the merits of Savanna's policy argument,[35] the Second Circuit has clearly limited the applicability of that doctrine "to two situations: geographic deviation and unauthorized on-deck stowage."[36] The circuit court has directly addressed the question of whether "corrupt or criminal misdelivery" constitutes unreasonable deviation, ruling that it does not.[37] Even *In re Complaint of Tecomar S.A.*,[38] cited by Savanna as noting the "unjust paradox" created by strictly limiting the unreasonable deviation doctrine,[39] held that the doctrine could not be expanded because of the Second Circuit's

---

[33]     COGSA § 4(5).

[34]     *See* Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Judgment on the Pleadings ("Opp. Mem.") at 3-8.

[35]     *See id.* at 5-7.

[36]     *Sedco*, 800 F.2d at 31.

[37]     *B.M.A. Indus.*, 786 F.2d at 92.

[38]     765 F. Supp. 1150 (S.D.N.Y. 1991).

[39]     *See* Opp. Mem. at 6-7.

holdings.[40]  This Court must follow the dictates of the Second Circuit.

Accordingly, I find that the doctrine of unreasonable deviation is inapplicable.

> **B.    MSC's Maximum Liability Depends Upon the Number of Customary Freight Units**

While COGSA's application to the shipment likely eliminates the vast majority of Savanna's potential recovery in this action, there is still the question of how many COGSA packages there are, if any.  As a matter of law, neither the cars nor the container were COGSA packages.  Accordingly, the limitation of MSC's liability under that Act depends upon the number of customary freight units that were shipped.

> **1.    The Parties Did Not Unambiguously Agree that the Container Is the Package**

MSC's argument that the container should be treated as the sole COGSA package ignores the Second Circuit's "significant container jurisprudence."[41]  Under that case law, the circuit court has demonstrated a "'repeatedly-expressed reluctance . . . to treat a container as a package.'"[42]  To

---

[40]    *See Tecomar*, 765 F. Supp. at 1184-85.

[41]    *Monica Textile*, 952 F.2d at 640.

[42]    *Id.* at 641 (quoting *Binladen*, 759 F.2d at 1015)).

rebut the presumption that the container is not a COGSA package, there must be "clear and unambiguous language indicating agreement" that the container is to be treated as the package.[43]

In this case, there is no such clear and unambiguous agreement. The bill of lading, though acknowledging receipt of "1 cntr," also notes the total number of packages as four.[44] Moreover, the container does not fit within the agreed-upon definition of container, which states that a container is "any palletised and/or unitised assemblage of cartons which has been palletised and/or unitised for the convenience of the Merchant."[45] As such, the bill of lading fails to demonstrate the "clear and unambiguous" expression of the parties' intent required to rebut the presumption that the container is not a COGSA package.

---

[43] *Smythgreyhound*, 666 F.2d at 753 n.20.

[44] *See* Bill of Lading at 1.

[45] *Id.* at 2; Terms and Conditions at 5.

## 2. Because the Cars Cannot Be COGSA Packages Under the Bill of Lading, MSC's Maximum Liability Is Determined by the Total Number of Customary Freight Units

While the container itself is not a package under COGSA, this does not mean that the contents of the container are. In making that determination, this Court "begin[s] with the use of the term 'package' in the bill of lading."[46]

The bill of lading expresses a clear intent that the cars were not to be treated as COGSA packages. Though there were four cars and the face of the bill of lading lists the number of packages as four, every other relevant part of the bill of lading negates the inference that this number was intended to define the number of packages for COGSA purposes.[47] *First*, the description of the goods states them to be "4 *unpackaged* multiple units of used autos." *Second*, the cars were not the only items shipped in the container — the bill of lading notes that "one lot of used auto parts" was included as well. *Third*, the definition of COGSA packages included in the bill — "any palletised and/or unitised assemblage of cartons which

---

[46] *Agfa Gevaert*, 2005 WL 2063836, at *6

[47] *See* Bill of Lading at 1.

12

has been palletised and/or unitised for the convenience of the Merchant" — cannot be read to include "unpackaged multiple units of used autos."[48]

When the shipment is not divided into items that can be classified as packages for COGSA purposes, the limitation of liability is instead determined by the number of "customary freight units."[49] In the Second Circuit, this means "the actual freight unit used by the parties to calculate freight for the shipment at issue."[50] Because the freight in this case was prepaid and the bill of lading does not disclose the units used to calculate it,[51] this Court lacks the evidence needed to determine the number of customary freight units that were shipped, and thus cannot determine MSC's maximum potential liability at this time.

---

[48] While courts will ordinarily defer to the number of packages stated on the bill of lading, this deference is only granted "'if the item to which the numbers referred could fairly be considered a package.'" *Orient Overseas*, 122 F. Supp. 2d at 488 (quoting *Seguros*, 929 F.2d at 95).

[49] COGSA § 4(5).

[50] *FMC*, 851 F.2d at 80 (citing *Binladen*, 759 F.2d at 783).

[51] *See* Bill of Lading at 1.

## VI. CONCLUSION

For the reasons set forth above, MSC's motion for partial judgment on the pleadings is granted in part and denied in part. The Clerk of the Court is directed to close this motion (Docket No. 15). A conference is scheduled for August 9, 2013 at 4:30 p.m.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:   New York, New York
         July 16, 2013

## - Appearances -

**For Plaintiff:**

Anne Casey Levasseur, Esq.
Charles Edmund Murphy, Esq.
Kevin John Lennon, Esq.
Lennon, Murphy, Caulfield & Phillips, LLC
420 Lexington Avenue, Suite 300
New York, NY 10170
(212) 490-6050


**For Defendant:**

Edward A. Keane, Esq.
Garth S. Wolfson, Esq.
Mahoney & Keane, LLP
40 Worth Street, 10th Floor
New York, NY 10013
(212) 385-1422